UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| GREGORY L. SULLIVAN and KOJI FUJITA,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN RAFAEL, a government entity; SAN RAFAEL POLICE DEPARTMENT, a government entity; RYAN DEMARTA, individually, and in his capacity as police officer for CITY OF SAN RAFAEL; RYAN COGBILL, individually, and in his capacity as police officer for the CITY OF SAN RAFAEL; and DOES 1 to 50,<br><br>Defendants../_____ | No. C 12-1922 MEJ<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) (DKT. NO. 4)** |

## I. INTRODUCTION

Plaintiffs Gregory Sullivan and Koji Fujita initiated this lawsuit in April 2012 against Defendants City of San Rafael ("City"), the San Rafael Police Department ("SRPD"), and Officer Ryan Demarta and Corporal Ryan Cogbill ("Officers"). Compl., Dkt. No. 1. Plaintiffs allege that the Officers — in response to reports from a neighbor that Sullivan was waiving a gun — unlawfully entered Plaintiffs' home, where they were wrongfully detained by the use of unreasonable force and arrested. *Id.* Defendants now move to dismiss parts of Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Dkt. No. 4. Plaintiffs have filed an Opposition, to which Defendants have filed a Reply. Dkt. Nos. 7 and 10. After carefully considering the parties' briefs and the controlling legal authorities, the Court GRANTS IN PART and DENIES

IN PART Defendants' Motion as set forth below.

## II.  BACKGROUND

The relevant facts as alleged in Plaintiffs' Complaint are as follows.

In June 2011, the Officers were dispatched to Plaintiffs' residence in response to a neighbor's report that Sullivan was waiving a gun. Compl. at ¶ 11. Demarta knocked on Sullivan's door while Cogbill remained in the front yard. *Id.* at ¶ 14. Sullivan — who did not have a visible weapon — opened the door but did not come outside. *Id.* at ¶ 12. Demarta asked Sullivan if he was having a problem with his neighbor and whether he was outside earlier, both of which Sullivan denied. *Id.* Sullivan stated that he had never owned a gun, and he only had a problem with his neighbor's dog. *Id.*

Demarta asked Sullivan to voluntarily step outside of his house, but he declined and attempted to close the door. *Id.* at ¶ 13. Demarta placed his foot inside the doorway to prevent Sullivan from closing the door and told Sullivan to get out. *Id.* Demarta then asked Sullivan to consent to a body search for weapons, but Sullivan declined and again refused to exit the house. *Id.* at ¶ 14. At that point, Demarta decided to enter Sullivan's house without permission, explaining he was concerned that: (1) Sullivan may be going into his house to get a gun; (2) Sullivan may later come out of his house with a gun and go over to the neighbor's house; or (3) Sullivan could possibly barricade himself inside his house with a gun. *Id.* at ¶ 15. Cogbill followed Demarta and also entered Sullivan's home. *Id.* at ¶ 11 (pg. 5).[1]

Sullivan was standing in his living room next to the couch after the Officers entered. *Id.* at ¶ 10 (pg. 5). Cogbill asked Sullivan to sit down on the couch so they could confirm he did not have a gun. *Id.* at ¶ 11. While Sullivan was still standing, Demarta allegedly shot him in the back with a

---

[1] Plaintiffs have erroneously numbered the paragraphs in their Complaint (starting at number 11 for a second time on page 5). This Order cites to the misnumbered paragraphs as they are referenced in the Complaint, but adds the page number of the cited paragraph for clarity when it is necessary.

taser from five feet away and without warning.[2] *Id.* at ¶ 12. Sullivan moved down the hallway and away from the Officers, and Demarta shot his taser at Sullivan again. *Id.* at ¶ 12. Sullivan then entered the bedroom and fell onto a bed where Fujita was sleeping. *Id.* Sullivan was lying with his back on the bed when Demarta allegedly employed his taser at him for the third time, which finally led to Sullivan's detention. *Id.* When Fujita woke up, he was scared and not clear about what was transpiring. *Id.* at ¶ 13. Cogbill told Fujita to let go of Sullivan, then grabbed Fujita and forced him off the bed and toward the kitchen, shoving him onto a table where he was handcuffed.[3] *Id.* Sullivan asked Demarta twice if he was under arrest, and Demarta said he was only being detained. *Id.* at ¶ 14 (pg. 6). After speaking with Cogbill — who had earlier talked to the neighbor who had complained about Sullivan — Demarta placed Sullivan under arrest. *Id.* When asked again, Demarta told Sullivan that he was being placed under arrest "for resisting." *Id.*

The San Rafael Fire Department arrived and told Sullivan he would be transported to Marin General Hospital for medical treatment. *Id.* at ¶ 15. Sullivan, a registered nurse, refused medical treatment several times, but was told that it was the "policy of [SRPD] that all persons shot with a Taser had to be taken to the hospital for an EKG exam on their heart." *Id.* Sullivan was therefore required to go the hospital for medical treatment and testing. *Id.* When Sullivan was transported to the hospital, he was forced to lie on his back on a gurney with his hands handcuffed behind him. *Id.* at ¶ 16 (pg. 7). As a result, he suffered injuries and lacerations to his wrists, hands, and arms. *Id.* Fujita also alleges that he suffered injuries to his wrists, hands, and arms as a result of being handcuffed. *Id.* at ¶ 18.

Plaintiffs have brought the following claims based on the actions taken by Defendants during the subject incident: (1) unlawful entry, false arrest, and excessive force under 42 U.S.C. § 1983 ("Section 1983") against the Officers; (2) unlawful entry, false arrest, and excessive force under

---

[2] In the police report, the Officers claim that after asking Sullivan to sit down, he yelled at them, turned, and started walking towards the hallway. Dkt. No. 1, Ex. A. Demarta provides that only after Sullivan turned his back and walked away did he shoot him with the taser. *Id.*

[3] Fujita was detained but never arrested.

Section 1983 against the City; (3) retaliation for protected speech under Section 1983 against the Officers; (4) retaliation for protected speech under Section 1983 against the City; (5) assault and battery; (6) false arrest and imprisonment; (7) intentional infliction of emotional distress ("IIED"); (8) negligent infliction of emotional distress ("NIED"); (9) violation of California Civil Code § 51.7 ("Section 51.7"); (10) violation of California Civil Code § 52.1 ("Section 52.1"); and (11) negligence.[4] Plaintiffs also ask this Court for injunctive relief to remedy the unlawful practices alleged in the Complaint.

### III. LEGAL STANDARD

A court may dismiss a complaint under FRCP 12(b)(6) when it does not contain enough facts to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts."

---

[4] Plaintiffs allege their state law claims against only the Officers, with the claim for false imprisonment being alleged solely by Sullivan.

4

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## IV.  DISCUSSION

Defendants only move to dismiss certain portions of Plaintiffs' Complaint.  The Court addresses the arguments from their Motion in turn below.

**A. Sullivan's Criminal Charges**

Defendants first argue that Sullivan's claims are barred by the criminal charges that were filed against him based on the incident.  Dkt. No. 4 at 5.  Defendants contend that while criminal charges are pending against a criminal defendant, he is barred from bringing both (1) a state action based on the conduct of the officers relating to the offense for which the accused is charged, and (2) a Section 1983 action arising from the same circumstances or facts.[5]  *Id.*  Defendants argue that Plaintiffs' failure to allege details in the Complaint regarding the offenses charged against Sullivan or outcome, if any, of his criminal case, make Sullivan's state and federal claims against Defendants improper.  *Id.* at 4-5.

Defendants' argument appears to be a distinction without a difference since Plaintiffs provide in their Opposition that all criminal charges against Sullivan have been dismissed.  Dkt. No. 7 at 3-4 (arguing that Plaintiffs' claims should not be barred because no criminal charges are pending against Sullivan).  Plaintiffs, however, have not pled such facts in their Complaint.  The Court, therefore, GRANTS Defendants' Motion on these grounds and provides Plaintiffs with LEAVE TO AMEND their Complaint to include the necessary allegations regarding Plaintiffs' criminal charges.

---

[5] Defendants argue that Sullivan's claims should be dismissed under California Government Code 945.3, which provides: "No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court." Additionally, Defendants rely on *Heck v. Humphrey*, 512 U.S. 477, 489 (1994), to support their assertion that while criminal charges are pending against a defendant, he may not maintain a Section 1983 claim arising from the same circumstances or facts**.**

**B. Official Capacity Claims Against the Officers**

Defendants next seek to dismiss Plaintiffs' Section 1983 claims against Demarta and Cogbill in their official capacities, arguing that they are equivalent to Plaintiffs' claims against the City and thereby "unnecessarily redundant." Dkt. No. 4 at 6. Defendants contend that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Plaintiffs counter that Defendants are seeking to dismiss the Officers in their official capacities and concurrently moving to dismiss *Monell* claims against the City, which would leave Plaintiffs with neither the Officers nor the City as a defendant for the acts alleged in the Complaint. Dkt. No. 7 at 4. From Plaintiffs' perspective, the Officers must either remain as Defendants in their official capacity, or Defendants' Motion must be denied with respect to Plaintiffs' second cause of action for municipal liability under Section 1983. *Id.* Plaintiffs, however, cite no authority to support this novel proposition.

Based on *Monell*, a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Butler v. Elle,* 281 F.3d 1014, 1023 (9th Cir. 2002) ( "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded."). Thus, "when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott,* 954 F.Supp. 202, 203 (C.D. Cal. 1997) (*citing Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996)).

The Court is persuaded by the above authorities and finds that the Officers are subject to

Plaintiffs' Section 1983 claims in their individual capacities only.  As such, Defendants' request to dismiss the Officers in their official capacity is GRANTED WITHOUT LEAVE TO AMEND.

**C.  Section 1983 Claims under Fifth and Fourteenth Amendments**

Defendants argue that Plaintiffs' Section 1983 causes of action for unlawful entry, false arrest, and excessive force fail to allege facts sufficient to support a claim for a violation of their Fifth or Fourteenth Amendment rights.  Defendants contend that neither the Fifth nor Fourteenth Amendment are applicable here, as claims for unlawful entry, false arrest, and excessive force are limited to a Fourth Amendment analysis since that Amendment specifically addresses unlawful searches and seizures.  Dkt. No. 4 at 7-9 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  Plaintiffs oppose these arguments, but they do not cite any case law to support their position that the Fifth and Fourteenth Amendments properly apply here.

The Court follows the authority cited by Defendants which finds that unreasonable search and seizure claims under Section 1983 are specifically governed by the Fourth Amendment under these circumstances.  *Id.* at 388 ("claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure'... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard"); *Larson v. Neimi*, 9 F.3d 1397, 1400-01 (9th Cir. 1993) ("Fourth Amendment standards must be used when a person asserts that a public official has illegally seized him."); *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir. 1989) (excessive force claims arising before or during an arrest are to be analyzed exclusively under the Fourth Amendment's reasonableness standard rather than the substantive due process standard ..."); *Talada v. City of Martinez*, 2009 WL 382758, at *12 (N.D. Cal. Feb. 12, 2009) ("Plaintiff Talada alleges a violation of his rights under the Fifth Amendment.  The Fifth Amendment due process clause and equal protection component apply only to actions of the federal government and not actions of local governments.").  Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND Defendants' request to dismiss Plaintiffs' Section 1983 claims to the extent they were brought under the Fifth and Fourteenth Amendments.

**D. Section 1983 Claims Under Fourth Amendment Against the City**

Next, Defendants contend that Plaintiffs' second cause of action for municipal liability under Section 1983 is unsupported by facts that would show that the allegedly unconstitutional conduct by the Officers was the result of an official City policy, pattern, or practice.  Defendants argue that Plaintiffs fail to establish that any policy, pattern, or practice of the City resulted in constitutional violations, or any causal connection between such a policy, pattern, or practice and Plaintiffs' alleged injuries.  Dkt. No. 4 at 10.  Defendants also contend that Plaintiffs make only conclusory allegations that "are wholly unsupported by any facts and constitute nothing more than an improper 'formulaic recitation of the elements' of *Monell* liability." *Id.*  Lastly, to the extent that Plaintiffs are asserting a Section 1983 ratification claim, Defendants argue that Plaintiffs have not proven that the authorized policymakers made a deliberate choice to approve a subordinate's decision and the basis for it. *Id.* at 11.  Plaintiffs counter that they have in fact set forth sufficient allegations in the Complaint to support a claim for municipal liability under *Monell*, noting that the Complaint goes into great detail about the failure on the part of the City to properly train or supervise the Officers.  Dkt. No. 7 at 6.

As explained earlier, under *Monell*, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  436 U.S. at 694.  To establish municipal liability under Section 1983, a plaintiff must show that (1) he was deprived of a constitutional right; (2) the municipality had a custom or policy; (3) that amounted to a deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation.  *East v. City of Richmond*, 2010 WL 4580112, at *3 (N.D. Cal. Nov. 3, 2010).  This municipal liability may be based on (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the decision of a person with final policymaking authority.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-27 (1988).

In their Opposition, Plaintiffs explain that the basis for their *Monell* claim is twofold.  For one, SRPD officials ratified the unconstitutional conduct of the Officers by permitting them to submit

charges against Sullivan to the Marin County District Attorney. Dkt. No. 7 at 6-7. This, however, is not a proper basis to establish *Monell* liability. "A municipality may be held liable for a constitutional violation under the theory of ratification if authorized policymakers approve a subordinate's decision and the basis for it." *East*, 2010 WL 4580112, at *4 (internal quotations and citation omitted). "In particular, the policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.* (internal quotations and citation omitted). Here, SRPD officials are not alleged to have known about the Officers' unconstitutional behavior before it transpired. Rather, Plaintiffs attempt to assert liability on the officials for their conduct after the alleged unconstitutional injuries were suffered. This is not actionable. *See, e.g., Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval.") (citing *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 781 (9th Cir. 1997) ("To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983.")).

     Plaintiffs' other basis for *Monell* liability against the City is that the Officers' deployment of the taser against Sullivan was in violation of SRPD policies and amounted to a failure to adequately train them. Dkt. No. 6 at 7 (citing Compl. at 14-15). The "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 386 (1989). It may happen that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 388-89. Plaintiffs' Complaint, however, does not contain any allegations that the City's policies were what led to their constitutional injuries. Rather than taking issue with the City's policies, Plaintiffs claim that the Officers violated these policies and conclude that they were therefore inadequately trained. This too is not actionable, and Plaintiffs have not cited any authority to the contrary. *See, e.g., City of Canton*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to

9

fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Accordingly, Defendants' request to dismiss Plaintiff's *Monell* claim against the City based on the Fourth Amendment is GRANTED WITH LEAVE TO AMEND.

**E.  Section 1983 Claims Under the First Amendment Against the Officers**

Defendants then move to dismiss Plaintiffs' third cause of action for retaliation for protected speech against the Officers, which the Court interprets to be a Section 1983 First Amendment claim. Dkt. No. 4 at 12.  Defendants argue that the Complaint contains no facts to support that the Officers' conduct was motivated by a desire to silence Plaintiffs or retaliate against them for their protected activity.  *Id.* at 13.  With respect to Fujita, Defendants contend that the Complaint does not contain any facts that Fujita even said anything to the Officers, or any allegations that suggest Cogbill used force or handcuffed Fujita with an intent to silence him.  *Id.*  With respect to Sullivan, Defendants argue that his refusal to exit his home or consent to a body search from Demarta does not in itself show that any of the Officers' conduct was in retaliation for anything he expressed.  *Id.*

Plaintiffs argue that the Complaint sets forth facts demonstrating that because Sullivan exercised his First Amendment right to tell the police officer "No" when Demarta asked him to come out of his house and voluntarily submit to a search, Demarta retaliated against Sullivan's right to free speech by unlawfully entering Plaintiffs' home and using excessive force against Sullivan.  *Id.* at 8. Plaintiffs contend that "having one's home unlawfully entered and suffering the pain and humiliation of three Taser employments certainly would 'chill or silence' a person of ordinary firmness from exercising his or her First Amendment activities in the future."  *Id.*  Plaintiffs, however, provide no explanation as to how Fujita's First Amendment rights were violated.  Nor do they cite any authority to support their position that the alleged unreasonable search and excessive force used against Sullivan — which comprises Sullivan's Fourth Amendment claim — also constitutes a Section 1983 First Amendment claim against the Officers.

To establish a First Amendment claim under Section 1983, the plaintiff must show that: (1) he was engaged in a constitutionally protected activity; (2) the defendant's retaliatory action caused the

10

plaintiff to suffer an injury that would likely deter a person of ordinary firmness from engaging in that protected activity; and (3) the retaliatory action was motivated, at least in part, by the plaintiff's protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). In other words, a plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action. *Hartman v. Moore*, 547 U.S. 250, 259 (2006). "Plaintiff must ultimately prove first that Defendants took action that would chill or silence a person of ordinary firmness from future First Amendment activities.... The second requirement is that ... Plaintiff must ultimately prove that Defendants' desire to cause the chilling effect was a but-for cause of Defendants' action." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008) (quoting *Scoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006) (internal brackets omitted)).

Having reviewed the Complaint, the Court finds that Plaintiffs only allege that the Officers entered the house because they believed Sullivan was going inside to get a gun**.** Compl. at ¶ 15 (pg. 4) (quoting Demarta's police report in which he provides that he entered the house because: "I thought that Sullivan was going into his house to get a gun. [ ] I also thought that if I did not go inside after Sullivan that he might come out later with a gun and go over to his neighbors. I also thought that Sullivan could possibly barricade himself inside the house with a gun."). Plaintiffs do not allege facts to support their position that the Officers entered their home against Sullivan's will with an intent to chill his speech or punish him based on his exercise of protected speech. With respect to Fujita, there are no allegations in the Complaint regarding his exercise of free speech or him being silenced due to that free speech. Because no facts are pled in the Complaint to suggest that any action taken by Defendants was in retaliation for Plaintiffs' protected activity, Defendants' Motion to dismiss Plaintiff's Section 1983 First Amendment claim is GRANTED WITH LEAVE TO AMEND.[6]

---

[6] Although the Court does not consider this issue since neither of the parties have briefed it, the Court is concerned that Plaintiffs are trying to pigeonhole their Section 1983 Fourth Amendment claims into First Amendment claims. It appears that Plaintiffs' chief complaint is that the Officers' conduct was unreasonable with respect to their search of Plaintiffs' home and the seizure of Plaintiffs. While Sullivan may have verbally refused to permit the Officers to enter his house,

### F. Section 1983 Claims Under the First Amendment Against the City

Defendants contend that Plaintiffs' fourth cause of action fails to state a municipal liability claim under Section 1983 for retaliation against protected speech. Dkt. No. 4 at 10. Defendants argue that Plaintiffs once again rely on a recital of the elements of municipal liability, unsupported by any actual facts that would indicate the allegedly unconstitutional conduct to be the result of an official policy, pattern or practice under *Monell*. *Id.* Plaintiffs counter that they have in fact stated sufficient facts in the Complaint to support an *Monell* claim. They provide no authority to support this proposition and merely point to the facts alleged in the Complaint as sufficient.

As explained above, this Court finds that Plaintiffs have not sufficiently pled a Section 1983 First Amendment claim against the Officers in their Complaint. Having not asserted a viable claim under the First Amendment, Plaintiffs' formulaic recitation of the elements of a *Monell* claim that references the First Amendment does not help them establish that such a claim is sufficiently pled against the City. Defendants' Motion on this cause of action is therefore GRANTED WITH LEAVE TO AMEND.

### G. Assault and Battery Claims

Defendants' next argument is that Plaintiffs' fifth cause of action for assault and battery against the Officers should be dismissed for failure to state a claim. "A battery is any intentional, unlawful and harmful contact by one person with the person of another." *Ashcraft v. King*, 228 Cal. App. 3d 604, 611 (1991). To establish a claim for battery, plaintiff must prove that: (1) the defendant touched him with the intent to harm or offend; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's situation would have been offended by the touching. CACI 1300. "A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of personal harm." *Lowry v. Standard Oil Co. of Cal.*, 63 Cal. App. 2d 1, 6-7 (1944). To establish a claim for

---

Plaintiffs have not provided any authority that such a verbal refusal automatically transforms a Fourth Amendment claim into a First Amendment claim as well. If Plaintiffs end up asserting this claim in their amended complaint, and Defendants move to dismiss it, both parties shall discuss this issue in their briefing.

1 assault, a plaintiff must prove that: (1) the defendant acted, intending to cause harmful or offensive
2 contact; (2) the plaintiff reasonably believed that he was about to be touched in a harmful or offensive
3 manner; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and
4 (5) the defendant's conduct was a substantial factor in causing plaintiff's harm.  CACI 1301.

5 　　　　With respect to the battery claims, Plaintiffs concede that they cannot state a battery claim for
6 Sullivan against Cogbill or for Fujita against Demarta.  Thus, Defendants' request to dismiss these
7 claims is GRANTED WITHOUT LEAVE TO AMEND.[7]

8 　　　　With respect to Sullivan's assault claim, Defendants appear to only argue that Cogbill cannot
9 be liable for such a claim since he had no contact with Sullivan and did not intend to inflict
10 immediate injury to him.  Sullivan, however, alleges that both Officers unlawfully entered his home
11 and were standing in his living room next to him.  Compl. at ¶¶ 11-12 (pg. 5).  Cogbill explicitly
12 instructed Sullivan to sit down, and, when Sullivan failed to do this, he was tasered by Demarta.  *Id.*
13 Sullivan specifically alleges that Cogbill's conduct placed him in immediate fear of severe bodily
14 harm by Cogbill.  *Id.* at ¶ 53.  These allegations — when interpreted, as required, in a light most
15 favorable to the Plaintiffs — properly plead the elements of an assault claim since Sullivan could
16 have reasonably feared that he was about to be touched by Cogbill in a harmful or offensive manner
17 when Cogbill was standing next to him and commanding him to sit down.  Accordingly, Defendants'
18 Motion on Sullivan's assault claim against Cogbill is DENIED.

19 　　　　With respect to Fujita's assault claim, Defendants again appear to only argue that Demarta
20 cannot be liable for such a claim since he had no contact with Fujita and did not intend to inflict
21 immediate injury to him. Unlike Sullivan's assault claim against Cogbill, the allegations by Fujita
22 against Demarta are much more attenuated in the Complaint.  Essentially, Plaintiffs seek to attach
23 liability on Demarta for deploying his taser on Sullivan while Fujita was waking up in bed.  Compl. at

---

[7] The Court is not clear if Defendants are arguing that Sullivan's battery claim against Demarta and Fujita's battery claim against Cogbill should be dismissed.  To the extent that Defendants do make this argument, it is DENIED.  Plaintiffs have sufficiently pled that Demarta physically contacted Sullivan without permission causing him harm that a reasonable person would have objected to.  The same is true with respect to the contact between Fujita and Demarta.

13

¶ 13 (pg. 5). There are no specific factual allegations that Demarta explicitly interacted with Fujita during this part of the incident or even acknowledged him. Rather, it appears that Demarta was only focused on detaining Sullivan and Fujita was solely a bystander that witnessed his partner being tasered. From these allegations, the Court cannot plausibly draw the inference that Demarta may be liable for assaulting Fujita. Thus, Defendants' Motion on this claim is GRANTED WITH LEAVE TO AMEND.

**H.  False Imprisonment Claim**

Plaintiffs' sixth cause of action is for false arrest and imprisonment, and it is pled by Sullivan against the Officers. Defendants only argue that the claim against Cogbill should be dismissed since he — unlike Demarta — did not arrest or detain Sullivan. Dkt. No. 4 at 15. Plaintiffs concede that Sullivan fails to state a claim for false imprisonment against Cogbill and ask for leave to amend their Complaint. Dkt. No. 7 at 10. Defendants' request to dismiss Sullivan's false imprisonment claim against Cogbill is therefore GRANTED WITH LEAVE TO AMEND.

**I.  IIED Claim**

Defendants next move to dismiss Plaintiffs' seventh cause of action for IIED on the grounds that it is unsupported by the allegations. Dkt. No. 4 at 15. Defendants argue that Plaintiffs' IIED claim "relies on mere conclusions that the officers' conduct was 'willful, intentional, malicious, wanton, oppressive, extreme and outrageous' and intended 'to inflict severe mental and emotional distress upon Plaintiffs.'" *Id.* at 16. Plaintiffs contend that the Complaint in its entirety sets forth facts sufficient to support the requirements of an IIED claim. Dkt. No. 7 at 10.

The elements of an IIED claim are: (1) outrageous conduct by the defendant; (2) intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *Aquino v. Super. Ct.*, 21 Cal.App.4th 847, 856 (1993). Outrageous conduct in the IIED context is conduct so extreme that it exceeds all bounds of what is usually tolerated in a civilized community. *Id.*

Construing the Complaint in the light most favorable to the Plaintiffs, this Court finds that they have sufficiently alleged an IIED claim against Defendants. Plaintiffs claim that the Officers

14

unlawfully entered their home in the middle of the night and then proceeded to utilize a taser on Sullivan on three occasions as well as slamming Fujita against a table even though he had just woken up. Plaintiffs further allege that, even though they were cooperative and did nothing wrong, they were unreasonably detained with excessive force, which caused them to suffer injuries and extreme emotional distress. Based on these allegations, Plaintiffs have pled a viable IIED claim and Defendants' Motion on these grounds is DENIED.

**J. Section 51.7 Claim**

Defendants also move to dismiss Plaintiffs' ninth cause of action for violation of Section 51.7 on the grounds that it is not supported by sufficient facts. Dkt. No. 4 at 16-17. Defendants contend that the claim "is based entirely on allegations that Fujita is recognizable as Asian-American and that Fujita and Sullivan are readily recognizable as homosexual" and the Complaint contains no other facts that the Officers' conduct was motivated because of race or sexual orientation. *Id.* at 17-18. Plaintiffs argue that since they have not had the opportunity to conduct any discovery, their allegations that the Officers' acts were motivated by race and sexual orientation are sufficient to state a claim under Section 51.7. Dkt. No. 7 at 11.

Section 51.7 protects individuals from violence on account of multiple protected characteristics, including race, sex, and marital status. *Austin B.*, 149 Cal. App. 4th 869, 880 (2007).[8] To state a claim under Section 51.7, the plaintiff must allege that: (1) the defendant threatened or committed violent acts against the plaintiff or his or her property; (2) a motivating reason for the defendant's conduct was his or her perception of a protected status; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff harm. *Id.* at 880-81.

---

[8] Section 51.7 provides: "(a) All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive; (b) This section does not apply to statements concerning positions in a labor dispute which are made during otherwise lawful labor picketing." Cal. Civ. Code § 51.7.

15

The Court agrees with Defendants that the allegations in support of Plaintiffs' Section 51.7 claim are not sufficient. The Complaint only alleges, based on speculation, that the Officers' conduct was due to Fujita's recognizable race and Plaintiffs' recognizable homosexuality. Compl. at ¶ 77. Plaintiffs fail to allege any other facts that would support their claim that the Officers were motivated by any discriminatory animus. Other courts have found that such bare assertions are not enough to state viable Section 51.7 claims. *See, e.g.*, *East*, 2010 WL 4580112, at *5 (finding that the plaintiff's allegation that the defendants' conduct was based on her race was not enough to state a Section 51.7 claim); *Arres v. City of Fresno*, 2011 WL 284971, at *27 (E.D. Cal. Jan. 26, 2011) (granting the defendants' motion to dismiss since the plaintiff's Section 51.7 claim was only based on the allegation that he was readily recognizable as Hispanic). While Plaintiffs are correct that FRCP 12(b)(6) does not require them to actually prove that race or sexual orientation was a motivating reason for the Officers' behavior, to have a viable Section 51.7 claim they must still allege some facts beyond the sole conclusory allegation that the Officers' conduct was motivated by their discriminatory prejudice. *Arres,* 2011 WL 284971, at *27. Thus, Defendants' request to dismiss Plaintiffs' Section 51.7 claim is GRANTED WITH LEAVE TO AMEND.

**K. Injunctive Relief Claim**

Lastly, Defendants move to dismiss Plaintiffs' claim for injunctive relief, arguing that they have no standing to assert this claim and have failed to allege facts justifying such extraordinary relief. Dkt. No. 4 at 18. Defendants explain that Plaintiffs do not allege a real and immediate threat that they will again be subjected to similar police tactics in the future, or any likelihood of future injury under the standard set out in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).[9] Plaintiffs

---

[9] Article III standing requires "an actual case or controversy" that would justify the equitable relief sought. *Lyons*, 461 U.S. at 101. "Abstract injury is not enough. The Plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical." *Id.* at 101-02. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 95-96. The basic requisites for equitable relief are "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Id.* at 103.

16

argue that because the Officers know where Plaintiffs live and how to find them, these acts may recur at any time unless an injunction is issued. Plaintiffs distinguish *Lyons*, arguing that San Rafael is a much smaller city than Los Angeles, and it is thus far more likely that they will suffer future similar injuries.

The Court agrees with Defendants and GRANTS their Motion WITHOUT LEAVE TO AMEND for Plaintiffs. The Court finds instructive that requests for injunctive relief similar to Plaintiffs' have been dismissed by other courts. *See, e.g., Rose v. Los Angeles*, 814 F.Supp. 878, 884-85 (C.D. Cal. 1993) (dismissing the plaintiff's request for injunctive relief stemming from excessive force claims since the plaintiff failed to meet her burden to show that there was a credible threat of future injury); *Hodgers-Durgin v. Gustavo De La Vina*, 199 F.3d 1037, 1042-44 (9th Cir. 1999). Plaintiffs do not even attempt to distinguish these cases. Moreover, Plaintiffs' argument that this matter is not analogous to *Lyons* because the SRPD knows where Plaintiffs reside and San Rafael is a smaller city than Los Angeles is not persuasive. For injunctive relief to be considered, Plaintiffs cannot speculate that these events may happen again, but must assert that there is a "likelihood of substantial and immediate irreparable injury," — something that they cannot under the circumstances of this case. *Lyons*, 461 U.S. at 103. Further, as in *Lyons*, Plaintiffs are provided with other remedies at law that afford them relief, such as money damages. *Id.* Plaintiffs' request for injunctive relief is therefore dismissed.

### V. CONCLUSION

For the reasons sets forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. No. 4) as follows.

The Court **GRANTS** Defendants' Motion with respect to the lack of allegations regarding Sullivan's criminal charges. Plaintiffs are granted **LEAVE TO AMEND** their Complaint to include such allegations.

The Court **GRANTS WITHOUT LEAVE TO AMEND** Defendants' Motion with respect to their request to dismiss any claims against the Officers in their official capacity.

The Court **GRANTS WITHOUT LEAVE TO AMEND** Defendants' Motion to Dismiss

17

Plaintiffs' Section 1983 claims to the extent they were brought under the Fifth and Fourteenth Amendments.

The Court **GRANTS WITH LEAVE TO AMEND** Defendants' Motion to Dismiss Plaintiffs' second cause of action for municipal liability under Section 1983.

The Court **GRANTS WITH LEAVE TO AMEND** Defendants' Motion to Dismiss Plaintiffs' third and fourth causes of action for retaliation for protected speech under the First Amendment.

The Court **GRANTS WITHOUT LEAVE TO AMEND** Defendants' Motion to Dismiss Sullivan's battery claim against Cogbill and Fujita's battery claim against Demarta. The Court **DENIES** Defendants' Motion to Dismiss Sullivan's assault claim against Cogbill. The Court **GRANTS WITH LEAVE TO AMEND** Defendants' Motion to Dismiss Fujita's assault claim against Demarta.

The Court **GRANTS WITH LEAVE TO AMEND** Defendants' Motion to Dismiss Plaintiffs' sixth cause of action against Cogbill for Sullivan's false arrest and imprisonment.

The Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' seventh cause of action for IIED.

The Court **GRANTS WITH LEAVE TO AMEND** Defendants' Motion to Dismiss Plaintiffs' ninth cause of action under Section 51.7.

The Court **GRANTS WITHOUT LEAVE TO AMEND** Defendants' Motion to Dismiss Plaintiffs' request for injunctive relief.

If Plaintiffs wish to amend their Complaint, they must do so by **August 24, 2012**.[10]

**IT IS SO ORDERED.**

Dated: August 6, 2012

Maria-Elena James
Chief United States Magistrate Judge

---

[10] In their Opposition, Plaintiffs seek leave to amend their Complaint to include an additional claim. This Court does not consider this request since it does not comply with Civil Local Rule 7-1.