# UNITED STATES  DISTRICT COURT

## Northern District of California

| | |
|---|---|
| GREGORY L. SULLIVAN and KOJI FUJITA, | No. C 12-1922 MEJ |
| Plaintiffs, | **ORDER RE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 52)** |
| v. | |
| CITY OF SAN RAFAEL, a government entity; SAN RAFAEL POLICE DEPARTMENT, a government entity; RYAN DEMARTA, individually, and in his capacity as police officer for CITY OF SAN RAFAEL; RYAN COGBILL, individually, and in his capacity as police officer for the CITY OF SAN RAFAEL; and DOES 1 to 50, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Gregory L. Sullivan and Koji Fujita ("Plaintiffs") filed this civil rights action under 42 U.S.C. § 1983 claiming that they suffered constitutional violations committed by the City of San Rafael, the San Rafael Police Department ("SRPD"), SRPD Officer Ryan Demarta, and SRPD Corporal Ryan Cogbill (collectively, "Defendants").  Before the Court is Defendants' Motion for Partial Summary Judgment.  Dkt. No. 52.  The Court finds this Motion suitable for disposition without oral argument and VACATES the July 11, 2013 hearing.  Civ. L.R. 7-1(b).  Having considered the parties' papers, relevant legal authority, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for the reasons set forth below.

**BACKGROUND**

**A.     Factual Background**

The following facts are taken from the parties' Joint Statement of Undisputed Facts ("JSUF"). Dkt. No. 56.  The incident giving rise to this action took place on June 1, 2011, in and near Plaintiffs' home at 315 Paloma Avenue, San Rafael, California.  JSUF ¶ 1.  Plaintiffs and their neighbor, Phillip Clar, had a history of disputes, and the Plaintiffs previously had sought a restraining order against Mr. Clar.  *Id.* ¶ 2.  However, the restraining order did not issue.  *Id.*  On June 1, 2011, at approximately 11:30 p.m., Mr. Clar's dog came onto Plaintiffs' property.  *Id.* ¶ 3.  Mr. Sullivan opened his front door and yelled at the dog to "Get out of here."  *Id.*  Mr. Clar was on the sidewalk and Mr Sullivan told him to "Get your dog out of here."  *Id.*  Mr. Clar responded by saying "Sullivan, I am taking out a contract on you," or very similar words, which Mr. Sullivan thought meant that Mr. Clar was going to hire someone to kill him.  *Id.*  Mr. Sullivan felt threatened.  *Id.*  Mr. Sullivan told Mr. Clar, "You're walking a very thin line," which Mr. Sullivan meant as a reference to the judge's admonition to Mr. Clar at the hearing on the restraining order sought by Mr. Sullivan against Mr. Clar.  *Id.*

Mr. Clar believed he saw Mr. Sullivan waving a small firearm in the air as he was yelling, but Mr. Clar was not sure if it was a gun.  *Id.* ¶ 4.  Fearing he would be shot, Mr. Clar hurried back to his house.  *Id.*  He then called 911 and reported that Mr. Sullivan had threatened his dog, that he believed Mr. Sullivan may have had a gun in his hand, and that he was in fear for his safety.  *Id.*

At 11:32 p.m., the SRPD dispatched Corporal Cogbill and Officer Demarta to the 300 block of Paloma Avenue for a possible man-with-a-gun call based on the complaint from Mr. Clar about Mr. Sullivan.  *Id.* ¶ 5.  The SRPD dispatch communicated the following information to Corporal Cogbill and Officer Demarta via radio: "K11, if you can cover on a suspicious search and contact an RP at 314 Paloma.  He says his neighbor across the street is drunk and was yelling at him because his dog ran across the street at 315 Paloma.  Said the subject was waving something in his hand that looked like a gun but he is not sure."  *Id.* ¶ 6.  SRPD dispatch advised Corporal Cogbill and Officer Demarta that Mr. Sullivan was "negative guns," meaning that Mr. Sullivan did not have any registered firearms.  *Id.* ¶ 7.

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Officer Demarta and Corporal Cogbill arrived on the scene separately and in different vehicles.

2    *Id.* ¶ 8.  Corporal Cogbill approached Mr. Clar's house to speak with him.  *Id.* ¶ 9.  Mr. Clar told

3    Corporal Cogbill that Mr. Sullivan had been in his driveway holding what appeared to be a small

4    pistol, and that Mr. Sullivan yelled at him to get his dog off the property or he would kill Mr. Clar

5    and his dog.  *Id.* ¶ 10.  Corporal Cogbill thought Mr. Clar clearly appeared afraid for his safety.  *Id.*

6    When Officer Demarta arrived on scene, Corporal Cogbill was already at the neighbor's house

7    and asked Officer Demarta, via radio, to contact Mr. Sullivan at his home across the street from

8    where Corporal Cogbill was located.  *Id.* ¶ 11.  The CAD recording of the radio conversation between

9    Officer Demarta and Corporal Cogbill captured no information being exchanged related to any

10   allegation of a criminal threat by Mr. Sullivan against Mr. Clar.  *Id.* ¶ 12.

11   At Mr. Sullivan's preliminary hearing[1], Officer Demarta testified that upon his arrival on scene,

12   and before he contacted Mr. Sullivan, Corporal Cogbill also advised him that Mr. Clar alleged that

13   Mr. Sullivan threatened to kill him: "Later, prior to me contacting Mr. Sullivan, I spoke to Officer

14   Cogbill, and he told me that the resident at 315 had threatened to kill Mr. Clar."  *Id.* ¶ 13.

15   Mr. Sullivan was watching television when he heard knocking on his door.  *Id.* ¶ 14.  He

16   looked through the peephole and saw Officer Demarta in his police uniform.  *Id.*  Mr. Sullivan

17   opened the door and asked how he could help the officer.  *Id.* ¶ 15.  He and Officer Demarta stood

18   approximately 14 inches apart.  *Id.*  Mr. Sullivan said he thought the officer was there because his

19   neighbor across the street, later identified as Mr. Clar, had phoned them.  *Id.*  Officer Demarta asked

20   Mr. Sullivan whether he had been outside earlier in the evening and had exchanged words with a

21   neighbor.  *Id.*  Mr. Sullivan admitted he had been outside earlier.  *Id.*  Officer Demarta believed Mr.

22   Sullivan displayed objective signs of being under the influence of alcohol and appeared intoxicated,

23   but Mr. Sullivan testified he only had a few sips of cognac prior to being contacted by Officer

24   Demarta.  *Id.* ¶¶ 16-17.

25   Officer Demarta asked Mr. Sullivan if he was having a problem with his neighbor.  *Id.* ¶ 18.

26   _____

27        [1] *The People of the State of California v. Gregory Lawrence Sullivan*, Marin County Case

28   No. SC176088A.  Dkt. No. 44 at ¶ 36.

1   Mr. Sullivan said he did not, but that there was a problem with his neighbor's dog being on his

2   property.  *Id.*  Officer Demarta explained to Mr. Sullivan that there was a report that he had been seen

3   outside waving a gun around.  *Id.* ¶ 19.  At the time he was standing on Mr. Sullivan's front porch,

4   Officer Demarta never articulated that Mr. Clar had alleged a criminal threat by Mr. Sullivan.  *Id.*

5       Officer Demarta asked Mr. Sullivan if he had a gun, to which he responded, "No, I don't."  *Id.*

6   ¶ 20.  Officer Demarta then asked Mr. Sullivan if he ever had a gun.  *Id.*  Mr. Sullivan laughed and

7   said "No."  *Id.*  However, Mr. Sullivan's admission that he did have a problem with his neighbor's

8   dog led Officer Demarta to believe he was involved in the reported incident of a man with a gun that

9   the officers were investigating.  *Id.* ¶ 21.

10      As Corporal Cogbill approached Plaintiffs' residence, he heard Officer Demarta telling

11  Mr. Sullivan he needed to make sure he did not have any weapons on his person and asking him to

12  step outside.  *Id.* ¶ 22.  Corporal Cogbill testified he heard Mr. Sullivan say "Fuck you" several times

13  to Officer Demarta in a hostile tone.  *Id.*  He testified he heard Officer Demarta again saying he

14  needed to search Mr. Sullivan and repeat his request for Mr. Sullivan to come outside, and heard Mr.

15  Sullivan repeatedly say "fuck you" to Officer Demarta.  *Id.*

16      Officer Demarta testified at the preliminary hearing that because he was responding to reports

17  of a man with a gun, for both officer and public safety, he wanted to search Mr. Sullivan to make sure

18  he did not have a weapon on him.  *Id.* ¶ 23.

19      Officer Demarta asked Mr. Sullivan to step outside so he could search him for a gun, but Mr.

20  Sullivan said "No."  *Id.* ¶ 24.  Officer Demarta again asked Mr. Sullivan to step outside and explained

21  he needed to search him for a gun, but Mr. Sullivan was determined he was not going to go outside to

22  be searched and responded by trying to close the door.  *Id.*  Corporal Cogbill could hear Officer

23  Demarta talking to Mr. Sullivan, explaining that he needed to search him to confirm he did not have

24  any weapons and asking him to come outside to be searched.  *Id.* ¶ 25.

25      Officer Demarta placed his foot in the door to prevent it from closing and again asked Mr.

26  Sullivan to come outside so he could search him for weapons.  *Id.* ¶ 26.  Mr. Sullivan refused to go

27  outside and be searched and he retreated further back into the house, at which point Officer Demarta

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

followed Mr. Sullivan into the house. *Id.* Mr. Sullivan stood in his living room and turned to face Officer Demarta. *Id.* ¶ 28. They stood chest to chest and Mr. Sullivan said, "Get the fuck out of my house." *Id.* Mr. Sullivan then turned away and headed towards the hallway. *Id.* ¶ 31. Officer Demarta told him to stop, but he kept heading down the hallway. *Id.* Mr. Sullivan testified that he never heard a command to stop. *Id.*

Corporal Cogbill saw Officer Demarta quickly enter the house after Mr. Sullivan and it appeared to him that Officer Demarta was moving quickly because he was afraid of something. *Id.* ¶ 27. Corporal Cogbill entered Plaintiffs' home because he was concerned about officer safety and the safety of the public. *Id.* ¶ 30. He did not know whether Mr. Sullivan had a gun, if there was a gun in the house or whether other people were in the house, and they were in the process of investigating reports of a man outside of his house waving a gun and threatening his neighbor. *Id.* Corporal Cogbill also believed Mr. Sullivan's behavior was suspicious because he believed a reasonable person who did not have a gun would say he did not have a gun and agree to be pat-searched to end the inquiry. *Id.*

Mr. Sullivan heard the officers speaking but did not know what they were saying. *Id.* ¶ 32. Officer Demarta was concerned that Mr. Sullivan was going for a gun and was concerned for his safety, Corporal Cogbill's safety, and Mr. Sullivan's safety. *Id.* ¶ 33. The officers had no idea what was in the back of the house, whether Mr. Sullivan had guns on his person, whether there were guns in the back of the house, or whether other people were in the house. *Id.* ¶ 34.

As Mr. Sullivan had quickly turned and was walking down the hallway, the situation was rapidly evolving when Officer Demarta decided to discharge his Electronic Control Device, or Taser. *Id.* ¶ 35-36. As Mr. Sullivan proceeded further into the house and had gotten three to five feet away from the officers, one of the Taser probes struck Mr. Sullivan in the back. *Id.* ¶ 36. Mr. Sullivan felt a sharp pain in the back of his shoulder. *Id.* He turned and saw that Officer Demarta was discharging his Taser as he told Mr. Sullivan he needed to search him. *Id.* Mr. Sullivan stopped briefly and yelled. *Id.* Mr. Sullivan then continued down the hallway and started to move into a bedroom. *Id.* ¶ 37. Officer Demarta reactivated the Taser unit, and Mr. Sullivan yelled again but continued to the

UNITED STATES DISTRICT COURT
For the Northern District of California

1    bedroom.  *Id.* ¶ 38.  The officers followed behind as they were concerned he was going for a gun or a

2    weapon, or that he might have a gun stashed on his person.  *Id.* ¶ 39.

3          Mr. Sullivan went into the bedroom, shouted for Mr. Fujita to wake up, and threw himself onto

4    the bed where Mr. Fujita was sleeping.  *Id.* ¶ 40.  Plaintiffs held onto each other in the bed, but

5    Officer Demarta shouted for them to let go and separate.  *Id.* ¶ 41.  Corporal Cogbill entered the

6    bedroom and also ordered Plaintiffs to separate and told Mr. Fujita to let go.  *Id.* ¶ 42.  Neither

7    Corporal Cogbill nor Officer Demarta identified themselves as San Rafael Police officers to Mr.

8    Fujita as he awoke and became aware of three people in his bedroom.  *Id.* ¶ 43.

9          Officer Demarta testified that as he tried to grab Mr. Sullivan, Mr. Sullivan flailed his arms and

10   kicked his legs, and Officer Demarta felt someone trying to push him away from Mr. Sullivan.  *Id.* ¶

11   44.  Officer Demarta testified that he told Mr. Sullivan to stop resisting and to put his hands behind

12   his back.  *Id.*  Corporal Cogbill grabbed Mr. Fujita and pushed him out of the room.  *Id.* ¶ 45.  Mr.

13   Fujita tried to go back into the bedroom, but Corporal Cogbill told Mr. Fujita that he could not go

14   back into the room, pushed him into the kitchen and onto the kitchen table, and handcuffed him

15   behind his back.  *Id.* ¶ 46.  Mr. Fujita was then taken to the living room to sit on the couch.  *Id.* ¶ 47.

16         Officer Demarta testified that Mr. Sullivan continued to flail his arms and kick his legs on the

17   bed, and that he told Mr. Sullivan to stop resisting and put his hands behind his back.  *Id.* ¶ 48.  Mr.

18   Sullivan eventually was handcuffed and pat-searched.  *Id.*

19         After Officer Demarta spoke with Corporal Cogbill about his conversation with Mr. Clar,

20   Officer Demarta arrested Mr. Sullivan.  *Id.* ¶ 49.  At the time Officer Demarta placed Mr. Sullivan

21   under arrest, he explained to Mr. Sullivan "that he was under arrest for resisting and obstructing a

22   police officer."  *Id.* ¶ 50.  Officer Demarta's police report does not state that he arrested Mr. Sullivan

23   for criminal threats.  *Id.*  However, at the October 26, 2011 preliminary hearing, Officer Demarta

24   testified that after receiving information from Corporal Cogbill, he arrested Mr. Sullivan for criminal

25   threats and resisting and obstructing a police officer.  *Id.* ¶ 51.

26         At the time of the incident, the SRPD had a written policy setting forth guidelines for the use of

27   force by officers.  *Id.* ¶ 52.  The policies are revised and updated on a consistent basis, and the

28

1    officers are required to review the SRPD policies on a consistent basis. *Id.*  At the time of the

2    incident, the SRPD had a written policy setting forth guidelines for use of the Taser device. *Id.* ¶ 53.

3         Prior to the incident, the officers received training on arrest procedures and Fourth Amendment

4    guidelines. *Id.* ¶ 54.  The officers had also received training on detentions based upon reasonable

5    suspicion. *Id.* ¶ 55.  Officer Demarta also received training on using a Taser device. *Id.* ¶ 56.

6         SRPD officers also receive formal ongoing training on use-force tactics, search and seizures,

7    and other police practices on a quarterly basis. *Id.* ¶ 57.  SRPD procedure for review of incidents was

8    that the involved officer prepares a report of the incident, which is given to their shift supervisor. *Id.*

9    ¶ 58.  The supervisor reviews all the reports and signs the report when it is approved. *Id.*

10        Whenever any type of force is used in a police incident, a supervising officer is required to

11   respond to the scene to visually examine the person on whom force was used and to speak with the

12   involved officer. *Id.* ¶ 59.  Corporal Byers was the supervising officer at the scene of the incident.

13   *Id.* ¶ 60.  At the time of the incident, the SRPD "Use of Force" Policy required the supervising officer

14   responding to the scene to "Separately obtain a recorded interview with the subject(s) upon whom

15   force was applied." *Id.*  Corporal Byers did not obtain a recorded interview per SRPD policy with

16   Mr. Sullivan or Mr. Fujita at the scene because he felt they were uncooperative. *Id.* ¶ 61.  Corporal

17   Byers did not contact Mr. Sullivan or Mr. Fujita at a later date to obtain a recorded interview per

18   SRPD policy because he "did not see the need to." *Id.* ¶ 62.

19        At the time of the incident, use of force incidents were, and still are, designated as such on the

20   written reports of the incident and logged and tracked as use of force incidents in the SRPD data

21   system. *Id.* ¶ 63.  Every three to six months, the SRPD use-of-force team of officers that creates the

22   use-of-force guidelines and provides instruction on use-of-force tactics for the department reviews

23   the reports to evaluate and critique the use-of-force incidents. *Id.*

24        Corporal Byers testified that, at the time of the incident, SRPD protocol was to outline any use

25   of force in the incident report. *Id.* ¶ 64.  However, no use-of-force investigation was conducted

26   concerning the incident. *Id.*

27

28

**B.      Procedural Background**

On April 18, 2012, Plaintiffs filed their initial Complaint, alleging the following claims: (1) unlawful entry, false arrest, and excessive force under 42 U.S.C. § 1983 against the Officers; (2) unlawful entry, false arrest, and excessive force under Section 1983 against the City; (3) retaliation for protected speech under § 1983 against the Officers; (4) retaliation for protected speech under § 1983 against the City; (5) assault and battery; (6) false arrest and imprisonment; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; (9) violation of California Civil Code section 51.7; (10) violation of California Civil Code section 52.1; and (11) negligence.  Dkt. No. 1.  On May 11, 2012, Defendants filed a Motion to Dismiss, which the Court granted in part and denied in part on August 6, 2012.  Dkt. Nos. 4, 18.

On August 22, 2012, Plaintiffs filed their First Amended Complaint ("FAC"), in which they allege the following claims: (1) unlawful entry, false arrest, and excessive force under § 1983; (2) municipal liability under § 1983; (3) assault and battery; (4) false arrest and imprisonment; and (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligence; and (8) violation of California Civil Code section 52.1.  Dkt. No. 19.

On February 7, 2013, Plaintiffs filed a Motion for Partial Summary Judgment.  Dkt. No. 28.  In their Motion, Plaintiffs sought a determination that Officer Demarta violated Plaintiffs' rights to be free from an unlawful, warrantless entry into their home, as guaranteed by the Fourth Amendment to the United States Constitution.  The Court denied Plaintiffs' Motion, finding that there were genuine disputes of material fact as to whether Officer Demarta's warrantless entry was justified.  Dkt. No. 48.

Defendants filed the present Motion for Partial Summary Judgment on May 23, 2013.  Dkt. No. 52.  In their Motion, Defendants argue that: (1) Plaintiffs' civil rights were not violated and their claims under 42 U.S.C. § 1983 are unsupportable; (2) Corporal Cogbill is entitled to qualified immunity; (3) the claim for municipal liability under § 1983 is unsupported by any evidence; (4) the state law claim for assault and battery is meritless; (5) the claim for false arrest and imprisonment is meritless; (6) claims for intentional and negligent infliction of emotional distress are unsupported by

United States District Court
For the Northern District of California

1   evidence; (7) the claim for violation of California Civil Code section 52.1 is unsupportable; and (9)

2   Defendants are immune under California Government Code sections 815.2, 820.2 and 820.8.  *Id.* at 1.

### LEGAL STANDARD

4          A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

5   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of

6   establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*

7   *Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most

8   favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (citation

9   omitted).  A genuine factual issue exists if, taking into account the burdens of production and proof

10  that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury

11  could return a verdict in that party's favor.  *Id.* at 248.  The court may not weigh the evidence, assess

12  the credibility of witnesses, or resolve issues of fact.  *Id.* at 249.

13         To defeat summary judgment once the moving party has met its burden, the nonmoving party

14  may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or

15  as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine

16  issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630

17  (9th Cir. 1987).  In other words, there must exist more than "a scintilla of evidence" to support the

18  non-moving party's claims, *Anderson,* 477 U.S. at 252; conclusory assertions will not suffice.

19  *Thornhill Publ'g Co. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

20         "The determination of whether a reasonable officer could have believed his conduct was

21  lawful is a determination of law that can be decided on summary judgment only if the material facts

22  are undisputed."  *LaLonde v. Cnty. of Riverside,* 204 F.3d 947, 953 (9th Cir. 2000) (citing *Act*

23  *Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir. 1993)).

24         ///

25         ///

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

9

**ANALYSIS**

**A.     Corporal Cogbill's Liability 42 U.S.C. § 1983**

In their FAC, Plaintiffs allege that Officer Demarta and Corporal Cogbill violated their Fourth Amendment rights to be free from unlawful entry into their home, unlawful arrest, and excessive force.[2] FAC ¶¶ 49-51.  Defendants argue that Plaintiffs have no evidence to support their claims as to Corporal Cogbill and that their claims cannot be based upon the conduct of Officer Demarta.  Mot. at 4.  Defendants further argue that, even if Plaintiffs could establish that Corporal Cogbill violated their civil rights, he is protected from liability by qualified immunity.  *Id.* at 12.

A plaintiff asserting a claim under 42 U.S.C. § 1983 must demonstrate that the action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right.  *Leer v. Murphy,* 844 F.2d 628, 632-33 (9th Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); U.S. Const. amend. IV.  The ultimate test of reasonableness requires the court to balance the governmental interest that justifies the intrusion and the level of intrusion into the privacy of the individual. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996).

1.     <u>Unlawful Entry</u>

In their first claim, Plaintiffs allege that an objectively reasonable officer would have known that there was no fair probability that Plaintiffs had committed or were committing any crime, and an objectively reasonable officer would have known that he was not permitted to enter their house without a warrant under these circumstances.  FAC ¶ 49.

The Fourth Amendment generally prohibits warrantless entry of a person's home, whether to make an arrest or to conduct a search, unless an exception to the warrant requirement, such as consent, emergency, or exigency, applies.  *Espinosa v. City and Cnty. of San Francisco,* 598 F.3d

---

[2] Although Plaintiffs' FAC asserts these claims generally against both Officer Demarta and Corporal Cogbill, the claim for unlawful arrest applies only to Mr. Sullivan.  FAC ¶ 50.

UNITED STATES DISTRICT COURT
For the Northern District of California

528, 533 (9th Cir. 2010).  It is well established that "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *LaLonde*, 204 F.3d at 954 (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)).  The presumption, however, is not irrebuttable.  *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009).  Exceptions are "narrow and their boundaries are rigorously guarded to prevent any expansion that would unduly interfere with the sanctity of the home." *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).

"There are two general exceptions to the warrant requirement for home searches: exigency and emergency." *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005).  The "'emergency' exception stems from police officers' 'community caretaking function' and allows them 'to respond to emergency situations' that threaten life or limb; this exception does 'not [derive from] police officers' function as criminal investigators.'" *Hopkins*, 573 F.3d at 763 (citing *United States v. Cervantes*, 219 F.3d 882, 889 (9th Cir. 2000)).  "By contrast, the 'exigency' exception does derive from the police officers' investigatory function; it allows them to enter a home without a warrant if they have both probable cause to believe that a crime has been or is being committed and a reasonable belief that their entry is 'necessary to prevent . . . the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" *Id.* (citing *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc)).

Because it is undisputed that Corporal Cogbill entered Plaintiffs' home without a warrant, unless a recognized exception justifies his entry, Plaintiffs can establish the violation of a constitutional right.  However, the Court finds that the undisputed evidence shows that Corporal Cogbill's warrantless entry was justified under the exigency exception.

The Supreme Court recently reiterated that "reasonableness 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and that '[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Ryburn v. Huff,* —— U.S. ——, 132 S.Ct. 987, 992 (2012) (per curiam) (alteration in original) (quoting *Graham,* 490 U.S. 386, 396-97).

**UNITED STATES DISTRICT COURT**
For the Northern District of California

11

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   Here, it is undisputed that Corporal Cogbill was dispatched to the scene by the SRPD "for a

2   possible man-with-a-gun call based on the complaint from Mr. Clar about Mr. Sullivan." JSUF ¶ 5.

3   Mr. Clar told Corporal Cogbill that Mr. Sullivan had been in his driveway holding what appeared to

4   be a small pistol, and that Mr. Sullivan yelled at him to get his dog off the property or he would kill

5   Mr. Clar and his dog. *Id.* ¶ 10. Corporal Cogbill thought Mr. Clar clearly appeared afraid for his

6   safety. *Id.* Further, as Corporal Cogbill approached Plaintiffs' residence, he heard Officer Demarta

7   telling Mr. Sullivan he needed to make sure he did not have any weapons on his person and asking

8   him to step outside. *Id.* ¶ 22. Corporal Cogbill testified he heard Mr. Sullivan say "Fuck you"

9   several times to Officer Demarta in a hostile tone. *Id.* He testified he heard Officer Demarta again

10  saying he needed to search Mr. Sullivan and repeat his request for Mr. Sullivan to come outside, and

11  heard Mr. Sullivan repeatedly say "fuck you" to Officer Demarta. *Id.* Corporal Cogbill saw Officer

12  Demarta quickly enter the house after Mr. Sullivan and it appeared to him that Officer Demarta was

13  moving quickly because he was afraid of something. *Id.* ¶ 27. Corporal Cogbill entered Plaintiffs'

14  home because he was concerned about officer safety and the safety of the public. *Id.* ¶ 30. He did

15  not know whether Mr. Sullivan had a gun, if there was a gun in the house or whether other people

16  were in the house, and they were in the process of investigating reports of a man outside of his house

17  waving a gun and threatening his neighbor. *Id.*

18      Based on the totality of these circumstances, the Court finds that Corporal Cogbill's entry into

19  Plaintiffs' residence was objectively reasonable. "Exigent circumstances obviating the requirement

20  of a warrant can include 'the need to assist persons who are seriously injured or threatened with such

21  injury.'" *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1142 (N.D. Cal. 2010) (quoting

22  *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006)); *see also  Mincey v. Arizona,* 437 U.S. 385, 392

23  (1978) ("The need to protect or preserve life or avoid serious injury is justification for what would be

24  otherwise illegal absent an exigency or emergency."). It was objectively reasonable for Corporal

25  Cogbill to believe that his entry into Plaintiffs' home was necessary to prevent the destruction of

26  relevant evidence, the escape of a suspect, or some other consequence improperly frustrating

27  legitimate law enforcement efforts.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Further, the Court notes that Plaintiffs fail to address the unlawful entry claim in their

2    Opposition, focusing their Fourth Amendment argument entirely on the excessive force claim.  Thus,

3    because the totality of the circumstances shows it was objectively reasonable for Corporal Cogbill to

4    have probable cause to believe that a crime had been or was being committed, as well as a reasonable

5    belief that his entry into Plaintiffs' home was necessary to prevent serious injury, the destruction of

6    relevant evidence, the escape of a suspect, or some other consequence improperly frustrating

7    legitimate law enforcement efforts, the Court finds that Defendants are entitled to summary judgment

8    as to Plaintiffs' unlawful arrest claim against Corporal Cogbill.  Accordingly, Defendants' Motion is

9    GRANTED as to Plaintiffs' first cause of action for unlawful entry against Corporal Cogbill.

10        2.    <u>Excessive Force</u>

11    In their FAC, Plaintiffs allege that Corporal Cogbill violated Mr. Fujita's clearly-established

12    right to be free from an intentional and unreasonable use of excessive force because "an objectively

13    reasonable officer would have known that slamming Mr. Fujita down on a kitchen table with enough

14    force to cause the table to slide across the kitchen until it hit against the kitchen cabinets was

15    excessive and could have led to Mr. Fujita's serious injury and/or death."  FAC ¶ 51.

16    In analyzing a Fourth Amendment claim of excessive force, the court balances "the 'nature

17    and quality of the intrusion'" on a person's liberty with the 'countervailing governmental interests at

18    stake' to determine whether the use of force was objectively reasonable under the circumstances.'"

19    *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (quoting *Graham*, 490 U.S. at 396).  "Determining

20    whether a police officer's use of force was reasonable or excessive therefore requires careful

21    attention to the facts and circumstances of each particular case and a careful balancing of an

22    individual's liberty with the government's interest in the application of force."  *Id.* (quotation

23    omitted).  The following factors are relevant when evaluating the need for force: (1) the severity of

24    the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others;

25    and (3) whether the suspect is resisting arrest or trying to evade arrest by flight.  *Graham*, 490 U.S. at

26    396-97.  Further, even if the force used later appears unnecessary, it is not per se unreasonable force

27    barred by the Fourth Amendment; instead, the reasonableness is judged from the perspective of a

28

13

1  reasonable officer on the scene, not with the 20/20 vision of hindsight.  *Id.* at 396-97.  Officers often

2  make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about

3  the amount of force that is necessary in a particular situation."  *Id.*

4        Here, construing the evidence in the light most favorable to Plaintiffs, the Court finds that

5  Defendants have failed to meet their burden of establishing the absence of a genuine issue of material

6  fact as to whether Corporal Cogbill used excessive force.  It is undisputed Mr. Fujita was sleeping at

7  the time of the incident.  JSUF ¶ 40.  It is also undisputed that neither Corporal Cogbill nor Officer

8  Demarta identified themselves as San Rafael Police officers to Mr. Fujita as he awoke and became

9  aware of three people in his bedroom.  *Id.* ¶ 43.  Further, in his police report, Corporal Cogbill states

10  that he "realized that [Mr. Fujita] was just woken up, was scared and had no idea what was going on."

11  Osman Decl., Ex. A at 4, Dkt. No. 53.  Corporal Cogbill also states that he pushed Mr. Fujita

12  "towards the kitchen table and shoved his upper torso down onto the table" with enough force "to

13  make it slide across the kitchen floor and come to a stop against the kitchen cabinets."  Rush. Decl.,

14  Ex. A at 42:13-43:7, Dkt. No. 61.  Taking the totality of the circumstances into account, the Court

15  finds that a reasonable jury could look to these facts and determine that the use of force against Mr.

16  Fujita was excessive in these circumstances.  Accordingly, Defendants' Motion is DENIED as to

17  Plaintiffs' first cause of action for excessive force against Corporal Cogbill.

18       3.  <u>Qualified Immunity</u>

19        Defendants argue that even if Corporal Cogbill's warrantless entry and use of force on Mr.

20  Fujita violated Plaintiffs' civil rights, Corporal Cogbill is protected from liability by qualified

21  immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil

22  damages insofar as their conduct does not violate clearly established statutory or constitutional rights

23  of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

24  (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The doctrine grows out of the policy

25  concern that few individuals would enter public service if they risked personal liability for their

26  official decisions.  *Harlow*, 457 U.S. at 814.  The immunity protects "all but the plainly incompetent

27  or those who knowingly violate the law," *Hunter v. Bryant*, 502 U.S. 224, 229 (1991), and "spare[s] a

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1 defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those

2 defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). "[Q]ualified

3 immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson*, 555 U.S. at

4 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

5 "Determining whether officials are owed qualified immunity involves two inquiries: (1)

6 whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the

7 officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly

8 established in light of the specific context of the case." *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th

9 Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It is within the court's "sound

10 discretion" to address these two prongs in any sequence it deems appropriate. *Pearson*, 555 U.S. at

11 236.

12 As discussed above, the facts do not show that Corporal Cogbill violated Plaintiffs' Fourth

13 Amendment right against warrantless entry. However, even if Plaintiffs were able to establish a

14 violation, the Court finds that Corporal Cogbill is entitled to qualified immunity because it would not

15 have been clear to a reasonable officer that his conduct was unlawful in the situation at issue. Based

16 on the undisputed facts, Corporal Cogbill could have reasonably believed that he was justified in

17 making a warrantless entry to ensure that no one inside the house was imminently threatened with

18 serious injury, or to prevent the destruction of relevant evidence or the escape of a suspect, or some

19 other consequence improperly frustrating legitimate law enforcement efforts. Accordingly, the Court

20 finds that Corporal Cogbill is entitled to qualified immunity as to Plaintiffs' cause of action for

21 warrantless entry.

22 As to Plaintiffs' excessive force claim, the Court finds that genuine disputed issues of material

23 fact exist and summary judgment is therefore improper. The Ninth Circuit has made clear that "when

24 [qualified immunity] depends on genuinely disputed issues of material fact, the court must submit the

25 fact-related issues to the jury." *Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998); *see also*

26 *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir. 2008) (noting that where "historical

27 facts material to the qualified immunity determination are in dispute," a jury must decide those facts).

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    "The determination of whether a reasonable officer could have believed his conduct was lawful is a

2    determination of law that can be decided on summary judgment only if the material facts are

3    undisputed." *LaLonde*, 204 F.3d at 953 (citing *Act Up!*, 988 F.2d at 873).

4            Here, as noted above, key disputed facts preclude the entry of summary judgment.  It is

5    undisputed Mr. Fujita was sleeping at the time of the incident.  JSUF ¶ 40.  It is also undisputed that

6    neither Corporal Cogbill nor Officer Demarta identified themselves as San Rafael Police officers to

7    Mr. Fujita as he awoke and became aware of three people in his bedroom.  *Id.* ¶ 43.  Further, in his

8    police report, Corporal Cogbill states that he "realized that [Mr. Fujita] was just woken up, was

9    scared and had no idea what was going on."  Osman Decl., Ex. A at 4.  Corporal Cogbill also states

10   that he pushed Mr. Fujita "towards the kitchen table and shoved his upper torso down onto the table"

11   with enough force "to make it slide across the kitchen floor and come to a stop against the kitchen

12   cabinets."  Rush. Decl., Ex. A at 42:13-43:7.  Taking the totality of the circumstances into account,

13   the Court finds that a reasonable jury could look to these facts and determine that it should have been

14   clear to Corporal Cogbill that his conduct was unlawful in the situation at issue.  Thus, the Court

15   finds that Defendants have not established that Corporal Cogbill is entitled to qualified immunity as a

16   matter of law as to Mr. Fujita's cause of action for excessive force.  Accordingly, Defendants'

17   Motion is DENIED as to qualified immunity on Plaintiffs' excessive force claim against Corporal

18   Cogbill.

19   **B.      Municipal Liability under 42 U.S.C. § 1983**

20           In their second cause of action, Plaintiffs allege municipal liability under § 1983 based upon

21   (1) inadequate and arbitrary training, supervision, and discipline of officers by SRPD; (2) SRPD's

22   failure to promulgate appropriate policies with respect to (a) in-home warrantless intrusions, (b)

23   lawful arrests, and (c) appropriate uses of force, including the use of Tasers; (3) the deliberate

24   indifference of SRPD to warrantless intrusions, false arrest, and use of excessive force; and (4)

25   customs or de facto policies of the SRPD that were ratified by final decision makers of the SRPD.

26   FAC ¶ 53.

27

28

1        Defendants argue that Plaintiffs cannot establish municipal liability in this case because they:

2   (1) have no evidence of any policy, pattern or custom that caused a violation of their constitutional

3   rights; (2) cannot establish municipal liability based upon ratification because there is no evidence

4   that policymakers made a deliberate choice to endorse a subordinate's decision and the basis for it;

5   and (3) have no evidence that the officers' training was inadequate.  Mot. at 16.

6        A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice,

7   or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.

8   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To impose municipal liability under § 1983

9   for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a

10  constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that

11  the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the

12  policy was the moving force behind the constitutional violation.  *Plumeau v. School Dist. #40 Cnty.*

13  *of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)  A plaintiff seeking to establish municipal liability

14  under § 1983 may do so in one of three ways: (1) the plaintiff may demonstrate that a municipal

15  employee committed the alleged constitutional violation "pursuant to a formal governmental policy

16  or longstanding practice or custom which constitutes the standard operating procedure of the local

17  governmental entity;" (2) the plaintiff may demonstrate that the individual who committed the

18  constitutional violation was an official with "final policy-making authority and that the challenged

19  action itself thus constituted an act of official government policy;" or (3) the plaintiff may

20  demonstrate that "an official with final policy-making authority ratified a subordinate's

21  unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346

22  (9th Cir. 1992).

23       Here, Plaintiffs fail to present any evidence of municipal liability based upon the first two

24  *Gillette* prongs.  Thus, Plaintiffs have failed to meet their burden and Defendants' Motion should be

25  granted as to these two allegations.  Accordingly, the Court's analysis herein focuses on the

26  ratification prong.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Plaintiffs focus on the SRPD's internal Use of Force policy, which requires that a supervisor

2   responding to the scene of an incident "[s]eparately obtain a recorded interview with the subject(s)

3   upon whom force was applied." Opp. at 6, Dkt. No. 60; JSUF ¶ 60. In particular, Plaintiffs contend

4   that Corporal Byers, Officer Demarta and Corporal Cogbill's, made a deliberate choice not to conduct

5   Plaintiffs' interviews because he "did not see the need to," thereby making a deliberate choice not to

6   follow the SRPD's own policies. Opp. at 6; JSUF ¶ 61. Thus, Plaintiffs argue that although SRPD

7   had knowledge that force had been used against Plaintiffs, no recorded interview by a supervisor was

8   obtained, thereby demonstrating a genuine issue of material fact regarding the ratification of Officer

9   Demarta and Corporal Cogbill's actions by deliberate indifference. Opp. at 6-7.

10   A municipality can be liable for an isolated constitutional violation if the final policymaker

11   "ratified" a subordinate's actions. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

12   However, a policymaker's knowledge of an unconstitutional act does not, by itself, constitute

13   ratification. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Instead, a plaintiff must prove

14   that the policymaker approved of the subordinate's act. *Id.* "For example, it is well-settled that a

15   policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval."

16   *Id.* at 1239-40 (citing *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 781 (9th Cir. 1997) ("To hold

17   cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional

18   discretionary acts of subordinates would simply smuggle respondeat superior liability into section

19   1983.") (citation and internal quotation marks omitted)); *Gillette*, 979 F.2d at 1348 (stating the same

20   principle)). Instead, the policymaker must have knowledge of the constitutional violation and must

21   make a "conscious, affirmative choice" to ratify the conduct at issue. *Lytle v. Carl*, 382 F.3d 978,

22   987 (9th Cir. 2004); *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), overruled on other

23   grounds by *Brousseau v. Haugen*, 543 U.S. 194 (2004)).

24   Plaintiffs argue that Corporal Byers is "an official responsible for establishing final policy"

25   regarding interviews with subjects upon whom force was applied. Opp. at 6. However, they present

26   no evidence that Corporal Byers is, in fact, an official responsible for establishing final policy on

27   behalf of the City of San Rafael or SRPD. Thus, while it is undisputed that his decision not to obtain

28

a recorded interview from Plaintiffs is contrary to SRPD policy, Plaintiffs have not presented any evidence that Corporal Byers is a final policy maker. "[T]he identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense." *Praprotnik*, 485 U.S. at 124. In *Praprotnik*, the Supreme Court explained, the "authority to make municipal policy is necessarily the authority to make final policy." *Id.* at 127 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986)). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* "Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.*

Here, Plaintiffs have failed to come forward with any evidence supporting their claim that Corporal Byers is a final policymaker for either the City or SRPD, or that a final policymaker approved Corporal Byers' act. Thus, the Court finds that no genuine issue of material fact exists. Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' second cause of action for municipal liability under 42 U.S.C. § 1983.

**C.   Assault and Battery**

    1.   Mr. Fujita

In their fourth cause of action[3], Plaintiffs allege that Corporal Cogbill is liable for assault and battery because he placed Mr. Fujita in immediate fear of severe bodily harm or death by using excessive force without any just provocation or cause. FAC ¶ 67. Plaintiffs allege that Corporal Cogbill used excessive force by taking Mr. Fujita from his bed, forcefully grabbing his arm, slamming him against a kitchen table with enough force to cause the table to slide across the kitchen

---

[3] Plaintiffs' third cause of action is also an assault and battery claim, brought on behalf of Mr. Sullivan against Officer Demarta (third cause of action). However, Defendants are not seeking summary judgment on behalf of Officer Demarta, *see* Reply at 2:21-22, and the Court therefore does not address the third cause of action.

and into the cabinets, and also by handcuffing Mr. Fujita in a manner that caused injuries. *Id.* In their Motion, Defendants argue that Plaintiffs' claim is meritless because the force used to control Mr. Fujita was objectively reasonable under the totality of the circumstances confronting the officers. Mot. at 19.

Under California law, police officers are explicitly permitted to use reasonable force to effect an arrest, prevent escape, or overcome the resistance of a person being arrested. Cal. Pen. Code § 835a. Accordingly, a law enforcement officer who uses force in the course of an arrest is not liable for battery unless the plaintiff proves that the force used was unreasonable. *Edson v. City of Anaheim,* 63 Cal. App. 4th 1269, 1272-73 (1998). For this reason, battery claims brought under California law are analyzed under the reasonableness standard used to evaluate Fourth Amendment claims and require the same evidentiary showing. *Id.* at 1274; *Susag v. City of Lake Forest,* 94 Cal. App. 4th 1401, 1413 (2002); *Saman v. Robbins,* 173 F.3d 1150, 1156-57 & n. 6 (9th Cir. 1999). Thus, the analysis of Plaintiffs' § 1983 claim applies equally to their claims for assault and battery. *Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1105-06 (N.D. Cal. 2011) (denying summary judgment on assault and battery claim against police officer where genuine issue of material fact existed regarding whether officers used reasonable force). As discussed above, the Court finds that a genuine issue of material fact exists regarding whether Corporal Cogbill used reasonable force against Mr. Fujita. Accordingly, the Court DENIES Defendants' Motion as to Plaintiffs' fourth cause of action for assault and battery against Defendant Cogbill.

### 2.   Mr. Sullivan

In their fifth cause of action, which is brought by Mr. Sullivan against Corporal Cogbill, Plaintiffs allege that Corporal Cogbill placed Mr. Sullivan in immediate fear of severe bodily harm or death without any just provocation or cause. FAC ¶ 76.

The tort of assault recognizes the individual's right to peace of mind and to live without fear of personal harm. *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1189 (S.D. Cal. 2010) (citing *Thing v. La Chusa*, 48 Cal.3d 644, 649, (1989)). To prevail on a claim of assault, a plaintiff must establish: (1) the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it

**UNITED STATES DISTRICT COURT**
For the Northern District of California

20

reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  Judicial Council of California, Civil Jury Instructions No. 1301 ("Assault"); *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007).

Here, viewing the evidence in the light most favorable to Plaintiffs, the Court finds that summary judgment is appropriate.  First, although Plaintiffs bring their fifth cause of action against Corporal Cogbill, they state no factual allegations against him.  Instead, they allege that Officer Demarta placed Mr. Sullivan in immediate fear of severe bodily harm or death by entering Plaintiffs' home without permission or a warrant, standing next to him, and commanding him to sit down.  FAC ¶ 76.  Second, the undisputed facts show that Corporal Cogbill's involvement with Mr. Sullivan was limited to following Officer Demarta into the residence and giving Mr. Sullivan verbal commands to separate from Mr. Fujita and to let him go.  JSUF ¶¶ 29, 30, 42.  There is no evidence, let alone allegations, that Corporal Cogbill threatened to touch Mr. Sullivan in a harmful or offensive manner.  Reviewing Plaintiffs' FAC, the Court notes that the only interaction Corporal Cogbill is alleged to have had with Mr. Sullivan that is not also in the joint statement of undisputed facts is when "Corporal Cogbill *asked* Mr. Sullivan to sit down by saying to Mr. Sullivan: 'Sir, please have a seat on the couch and let us make sure you do not have a gun.'"  *Id.* ¶ 17 (emphasis in original).  Again, this does not rise to the level of a threat to touch Mr. Sullivan in a harmful or offensive manner.  Based on this analysis, the Court finds that there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants' Motion is GRANTED as to Plaintiffs' fifth cause of action for assault against Corporal Cogbill.

**D.     False Arrest and Imprisonment**

Plaintiffs' sixth cause of action is for false arrest and imprisonment against Officer Demarta.  FAC ¶¶ 83-91.  Although Defendants' Motion seeks summary judgment on this claim, their Motion focuses on Corporal Cogbill, against whom the claim is not brought.  Further, Defendants are not seeking summary judgment on behalf of Officer Demarta.  *See* Reply at 2:21-22.  Accordingly,

Defendants' Motion is DENIED as to Plaintiffs' six cause of action for false arrest and imprisonment against Officer Demarta.

**E.      Intentional Infliction of Emotional Distress**

Plaintiffs' seventh cause of action is for intentional infliction of emotional distress against Officer Demarta and Corporal Cogbill.  FAC ¶¶ 92-94.  In their Motion, Defendants argue that Plaintiffs have no evidence to support their claim as to Corporal Cogbill.  Mot. at 21.  As Plaintiffs do not oppose Defendants' Motion on this claim, *see* Opp. at 10, the Court GRANTS Defendants' Motion as to Plaintiffs' seventh cause of action for intentional infliction of emotional distress, but only as Corporal Cogbill.

**F.      Negligent Infliction of Emotional Distress**

Plaintiffs' eighth cause of action is for negligent infliction of emotional distress against Officer Demarta and Corporal Cogbill.  FAC ¶¶ 95-97.  "A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply."  *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377 (2010) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1004 (1993)).  As Plaintiffs bring a separate cause of action for negligence and do not oppose Defendants' Motion on this claim, *see* Opp. at 10, the Court GRANTS Defendants' Motion as to Plaintiffs' eighth cause of action for negligent infliction of emotional distress.

**G.      Negligence**

Plaintiffs' ninth cause of action is for negligence against Officer Demarta and Corporal Cogbill.  FAC ¶¶ 98-100.  Plaintiffs allege that Corporal Cogbill was subject to a duty of care to avoid causing unnecessary physical harm and distress to persons through their use of force and making of arrests.  *Id.* ¶ 99.  They allege that Corporal Cogbill's conduct did not comply with the standard of care to be exercised by reasonable persons and did not comply with the policies of SRPD, thereby proximately causing Plaintiffs injury.  *Id.*  Plaintiffs further allege that, pursuant to California Government Code section 815.2(a), Defendants SRPD and City of San Rafael are vicariously liable to Plaintiffs for their injuries.  *Id.*  In their Motion, Defendants argue that they are entitled to

UNITED STATES DISTRICT COURT
For the Northern District of California

1  summary judgment because Corporal Cogbill's conduct was objectively reasonable under the

2  circumstances. Mot. at 21.

3      California Civil Code section 1714(a) provides that: "Everyone is responsible, not only for the

4  result of his or her willful acts, but also for an injury occasioned to another by his or her want of

5  ordinary care or skill in the management of his or her property or person, except so far as the latter

6  has, willfully or by want of ordinary care, brought the injury upon himself or herself." To prevail on

7  a claim for negligence, Plaintiffs must establish: (1) a legal duty to use due care; (2) a breach of that

8  duty; and (3) injury that was proximately caused by the breach. *Ladd v. County of San Mateo*, 12

9  Cal.4th 913, 917 (1996).

10     As to Corporal Cogbill, the Court finds that summary judgment is inappropriate. Police

11  officers have a duty not to use excessive force. *Munoz v. City of Union City*, 120 Cal. App. 4th 1077,

12  1101 (2004) (recognizing "a duty on the part of police officers to use reasonable care in deciding to

13  use and in fact using deadly force"). As discussed above, Defendants have failed to meet their

14  burden of establishing the absence of a genuine issue of material fact as to whether Corporal Cogbill

15  used excessive force. It is undisputed Mr. Fujita was sleeping at the time of the incident. JSUF ¶ 40.

16  It is also undisputed that neither Corporal Cogbill nor Officer Demarta identified themselves as San

17  Rafael Police officers to Mr. Fujita as he awoke and became aware of three people in his bedroom.

18  *Id.* ¶ 43. Further, in his police report, Corporal Cogbill states that he "realized that [Mr. Fujita] was

19  just woken up, was scared and had no idea what was going on." Osman Decl., Ex. A at 4, Dkt. No.

20  53. Corporal Cogbill also states that he pushed Mr. Fujita "towards the kitchen table and shoved his

21  upper torso down onto the table" with enough force "to make it slide across the kitchen floor and

22  come to a stop against the kitchen cabinets." Rush. Decl., Ex. A at 42:13-43:7, Dkt. No. 61. Taking

23  the totality of the circumstances into account, the Court finds that a reasonable jury could look to

24  these facts and determine that the use of force against Mr. Fujita was excessive in these

25  circumstances. As such, a reasonable jury could also determine that, if Corporal Cogbill breached his

26  duty, any injury suffered by Mr. Fujita could have been caused by the breach. Accordingly,

27  Defendants' Motion is DENIED as to Plaintiffs' ninth cause of action for negligence against Corporal

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Cogbill.

**H.      California Civil Code section 52.1**

Plaintiffs' tenth cause of action is for violations of California Civil Code section 52.1 against Officer Demarta and Corporal Cogbill.  FAC ¶¶ 101-05.  In their Motion, Defendants argue that Plaintiffs have no evidence to support their claim as to Corporal Cogbill.  Mot. at 22.  As Plaintiffs do not oppose Defendants' Motion on this claim, *see* Opp. at 10, the Court GRANTS Defendants' Motion as to Plaintiffs' tenth cause of action under California Civil Code section 52.1, but only as Corporal Cogbill.

**I.      Immunity**

In their Motion, Defendants argue that Corporal Cogbill is immune from Plaintiffs' claims under California Government Code section 820.2 and that the City of San Rafael is immune under section 815.2.  Mot. at 22.  However, Defendants fail to set forth any evidence showing they are entitled to immunity, let alone whether this claimed immunity applies to any specific causes of action.  Regardless, it does not appear that Defendants are entitled to immunity.

1.      <u>Section 820.2</u>

The Government Claims Act provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2.  It is clear from California case law, however, that "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." *Barner v. Leeds*, 24 Cal.4th 676, 684-85 (2000).  In analyzing the discretionary immunity conferred by section 820.2, the California Supreme Court has drawn a distinction between policy decisions, which are immunized, and ministerial or operational decisions, which are not.  In *Caldwell v. Montoya*, the California Supreme Court explained that immunity is reserved for areas of quasi-legislative policy-making and applies only to "deliberate and considered policy decisions, in which a [conscious] balancing [of] risks and advantages . . . took place."  10 Cal.4th 972, 981 (1995) (quotation makes and citation omitted).  In contrast, day-to-day operational decisions are not

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

immunized by section 820.2, even if they require "exercise of considerable judgmental skills." *Barner*, 24 Cal.4th at 686-87. Thus, while a police officer's initial decision to investigate a car accident may constitute a discretionary decision immunized by section 820.2, the officer is not immunized from any negligence in conducting the investigation. *McCorkle v. City of Los Angeles*, 70 Cal.2d 252, 261-62 (1969).

This authority suggests that the initial, considered decision to enter Plaintiffs' home may be immunized by section 820.2, but the decisions made during the course of the subsequent operation might not be. *Obas v. Cnty. of Monterey*, 2011 WL 738159, at *12 (N.D. Cal. Feb. 22, 2011) *aff'd*, 504 F. App'x 558 (9th Cir. 2013) (finding that section 820.2 provides immunity for initial, considered decision to conduct a tactical operation to apprehend, but does not immunize defendants for any negligence that occurs during subsequent arrest and transport to the patrol car).

Further, section 820.2 does not apply to officers who use unreasonable force in effecting an arrest. *Blankenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007) (citing *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 262 (1967) ("[A] peace officer making an arrest is liable to the person arrested for using unreasonable force."); *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002)). Thus, because there is a question of material fact as to whether the use of force employed by Corporal Cogbill was objectively reasonable, the Court DENIES Defendants' Motion as to section 820.2.

2.  Section 815.2

California Government Code section 815.2 provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). This provision clearly allows for vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest. *Blankenhorn*, 485 F.3d at 488 (citing *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215 (1991) ("[A] governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive

25

conduct.")).  Here, Defendants do not argue that Corporal Cogbill was acting outside the scope of his duties.  Thus, because Corporal Cogbill is not entitled to summary judgment on the use of unreasonable force, neither are the municipal defendants entitled to immunity from liability under Government Code section 815.2.  The Court therefore DENIES Defendants' Motion as to section 815.2.

## CONCLUSION

Based upon the analysis above, Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART as follows:

1) Defendants' Motion is GRANTED as to Plaintiffs' first cause of action for unlawful entry against Corporal Cogbill;

2) Defendants' Motion is DENIED as to Plaintiffs' first cause of action for excessive force against Corporal Cogbill, and Corporal Cogbill is not entitled to qualified immunity as to Mr. Fujita's cause of action for excessive force;

3) Defendants' Motion is GRANTED as to Plaintiffs' second cause of action for municipal liability under 42 U.S.C. § 1983;

4) Defendants' Motion is DENIED as to Plaintiffs' fourth cause of action for assault and against Defendant Cogbill;

5) Defendants' Motion is GRANTED as to Plaintiffs' fifth cause of action for assault against Corporal Cogbill;

6) Defendants' Motion is DENIED as to Plaintiffs' six cause of action for false arrest and imprisonment against Officer Demarta;

7) Defendants' Motion is GRANTED as to Plaintiffs' seventh cause of action for intentional infliction of emotional distress, but only as Corporal Cogbill;

8) Defendants' Motion is GRANTED as to Plaintiffs' eighth cause of action for negligent infliction of emotional distress;

9) Defendants' Motion is DENIED as to Plaintiffs' ninth cause of action for negligence against Corporal Cogbill;

UNITED STATES DISTRICT COURT
For the Northern District of California

10) Defendants' Motion is GRANTED as to Plaintiffs' tenth cause of action under California Civil Code section 52.1, but only as Corporal Cogbill; and

11) Defendants' Motion is DENIED as to immunity under California Government Code sections 815.2 and 820.2.

**IT IS SO ORDERED.**

Dated: July 2, 2013

_____
Maria-Elena James
United States Magistrate Judge

27